**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **JAN. 24, 2008**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In re: VICTOR MONDELLI,** | Case No.:    04-15268 (DHS) |
| Debtor. | Judge: Donald H. Steckroth, U.S.B.J. |

**OPINION**

**APPEARANCES:**

Hallock & Cammarota, LLP
Kenneth Rosellini, Esq.
600 Valley Road, Suite 101
Wayne, New Jersey 07470
***Counsel for Debtor Victor Mondelli***

Franzblau Dratch PC
S.M. Chris Franzblau, Esq.
Martin Fenik, Esq.
354 Eisenhower Parkway
Livingston, New Jersey 07039
***Co-Counsel for Jack Silverman Realty & Mortgage Co., L.L.C.* and *Berkeley Realty Partners 244, LLC***

Ravin Greenberg LLC
Chad B. Friedman, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
***Co-Counsel for Jack Silverman Realty & Mortgage Co., L.L.C.* and *Berkeley Realty Partners 244, LLC***

Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.
Shoshana Schiff, Esq.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
***Counsel for Nicholas J. Delzotti, Chapter 7 Trustee for Victor Mondelli***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are several motions filed by Victor Mondelli, ("Debtor"), on November 26, 2007, seeking the following: (i) reconsideration of the Court's November 19, 2007 Order ("Enforcement Order") enforcing the terms of the Loan and Ground Lease between the Debtor and Berkeley Realty Partners 244, LLC ("BRP"); (ii) reconsideration of the Court's November 13, 2007 Order ("Abandonment Order") authorizing the Trustee's abandonment of the property located at 260-264 Springfield Avenue, Berkeley Heights, New Jersey ("Property"); (iii) an Order for the termination of the Ground Lease; and (iv) the recusal of The Honorable Donald H. Steckroth, United States Bankruptcy Judge. Specifically, the Debtor argues that: (i) new evidence exists that demonstrates that BRP breached its obligations under the Ground Lease and the Ground Lease should be terminated; (ii) BRP's actions clog the Debtor's equitable right of redemption and violate New Jersey's public policy; (iii) the Debtor is not under any obligation to execute subordination documents until BRP provides proof that it is obtaining financing for development of the Property; and (iv) an appearance of bias mandates recusal of this Court pursuant to 28 U.S.C. § 144.

On January 2, 2008, BRP and Jack Silverman Realty & Mortgage Co., LLC ("JSRM") jointly opposed the Debtor's motions submitting that: (i) whether the Debtor is seeking reconsideration of the Abandonment Order is unclear because the issue is unaddressed in the Debtor's letter memorandum despite his Notice of Motion indicating such relief is being sought and (ii) if the Debtor's request regarding abandonment is denied, the remainder of his motion is beyond the jurisdiction of this Court because the property will no longer be part of the bankruptcy estate. BRP and JSRM further maintain that assuming, *arguendo*, the Court has jurisdiction over this matter, the Debtor's motion must still be denied because: (a) there has been no material default

under the Ground Lease as all real estate tax and insurance arrears were the result of lack of notification to BRP by the Debtor and such arrears have since been paid in full; (b) BRP is entitled to directly occupy or sublet the unit under the terms of the Ground Lease; (c) the subordination argument was abandoned at the hearing before this Court on October 30, 2007 so it cannot be an issue in the instant motion; (d) the Debtor's public policy arguments should have been timely raised previously; (e) the Ground Lease is just that and not the equivalent of an option or deed in lieu of foreclosure and thus does not preclude the Debtor's equitable right of redemption; (f) the Debtor has failed to bear his burden of proving grounds to grant reconsideration of the Orders at issue; and (g) there is no basis for recusal here simply because this Debtor disagrees with the rulings of this Court but does not provide the required showing of grounds for alleged favoritism or bias.

Nicholas J. Delzotti, Chapter 7 Trustee for the Debtor ("Trustee"), also filed opposition to the Debtor's motions arguing that: (i) no grounds for recusal have been proven pursuant to 28 U.S.C. § 455(a) or § 455(b)(1); (ii) the Trustee does not take a position with respect to the motion to terminate the Ground Lease, but, if the Court grants the Debtor's motion, the Trustee then would request that the Court void the Abandonment Order and allow the Trustee to file a motion to sell the Property; and (iii) the Debtor's motion to reconsider the Abandonment Order was not timely filed and the Debtor has not met his burden of proving grounds for reconsideration.

### Statement of Facts and Procedural History

**A.    Background**

The Debtor filed a voluntary Chapter 13 bankruptcy petition on February 18, 2004. *Objection of Nicholas J. Delzotti, Chapter 7 Trustee, to Debtor's Motions ("Trustee's Obj.")*, at ¶2. The Debtor's case was converted to Chapter 7 on October 21, 2004 and the Trustee was appointed on

November 2, 2004. *Id.* at ¶¶4-5. On February 7, 2005, the Debtor's case was reconverted to Chapter 13 and the Court entered an Order confirming the Chapter 13 Plan on February 3, 2006. *Id.* at ¶¶5-6. On February 9, 2007, the Chapter 13 Trustee filed a motion to vacate the Order of conversion to Chapter 13 because the Debtor failed to refinance his Property and was in breach of his Chapter 13 Plan for failure to make monthly payments**.** *Id.* at ¶8. The Debtor did not to oppose the Trustee's motion. *Id.* On February 21, 2007, the Debtor's case was reconverted to chapter 7 for which the Order was affirmed by the District Court on December 11, 2007. *Id.* at ¶9, n.1.

On March 23, 2007, the Trustee filed a motion to approve the sale of the Debtor's Rental Property for $810,000.00. *Id.* at ¶10. On March 24, 2007, the Debtor filed a motion to dismiss the chapter 7 proceeding and to refinance in the chapter 13. *Id*. at ¶11. On April 1, 2007, the Debtor filed a motion to obtain a mortgage for his residence and property in order to complete the chapter 13 Plan. *Id.* at ¶12. On April 27, 2007, after a conference with the Court and interested parties, an Order was entered granting the Debtor's wish and allowing him to attempt to obtain sufficient financing to pay all creditors in full on the condition that the closing occur on or before May 16, 2007. *Id.* at ¶13. If the Debtor failed to comply, the Trustee would have the authority to sell the rental property. *Id.* On May 16, 2007, the Debtor obtained financing, the secured creditors were paid in full and the balance was remitted to the Trustee. *Id.* at ¶14.

On July 19, 2007, the Court conducted a hearing on the validity of a claim filed by Singer Real Estate ("Singer"). At the hearing, the Debtor argued that Singer was not entitled to a commission on the renewal of the lease with Domino's Pizza, the current lessee, at the Property. *Id.* at ¶18. Domino's Pizza's Counsel submitted to the Court that a representative had taped a conversation with the Debtor where the Debtor acknowledged the validity of Domino's Pizza's

lease. *Id*. Singer's counsel then asserted that the issue was whether the Debtor committed fraud on BRP. *Id.*

**B.     Debtor's Statement of Facts**

On May 16, 2007, the Debtor entered into a Ground Lease with BRP. *Certification of Victor Mondelli ("Mondelli Cert.")*, Exhibit A. Debtor alleges that he entered into the Ground Lease as a "good will gesture toward developing a strong relationship with a future business partner/ground lessee." *Id.* at ¶4. Debtor maintains that had he known BRP would insist upon subleasing the Property he would not have entered into the Ground Lease. *Id.* at ¶5.

This Court entered the following orders relevant to the instant motion: (i) First Loan Authorization Consent Order on April 27, 2007 allowing the Debtor to retain his interest in the Property by securing a loan from JSRM for $650,000.00; (ii) Second Loan Authorization Consent Order on May 15, 2007 authorizing the closing of the loan and directing the allocation of the proceeds; (iii) May 16, 2007 Consent Order allowing the Debtor and BRP to enter into the Ground Lease ("First Ground Lease Consent Order"); and (iv) June 27, 2007 Consent Order authorizing the Ground Lease without limitation ("Second Ground Lease Consent Order") (collectively referred to as "April-June 2007 Consent Orders"). The Debtor's consent was affixed to each of these Orders. On August 30, 2007, the Trustee filed a Notice of Information of Abandonment of the Property.

On October 30, 2007, the Court heard oral argument on JSRM and BRP's motion to enforce the above listed Consent Orders and on the abandonment motion with the Court granting each of the motions on November 19, 2007 and November 13, 2007, respectively. On or about November 13, 2007, the Tax Collector of the Township of Berkeley Heights ("Township") informed the Debtor that fourth-quarter real estate taxes had not been paid. *Id.* at ¶8. The Debtor then determined that

6

insurance premiums had not been paid on the Property since September 14, 2007. *Id.* at ¶9. The Debtor argues that these deficiencies constitute a basis to terminate the Ground Lease.

The Debtor contends that he did not execute any documents to the Township for the construction or occupancy of 262 Springfield Avenue. *Id.* at ¶10. Debtor learned that a certificate of occupancy had been issued to Emerald Construction, not BRP. *Id.* at ¶11. Debtor also became aware that the Ground Lease contains a "blanket zoning option" exercisable by BRP, a provision to which neither he nor Anne Modelli, his mother, with whom he resided, had agreed. *Id.* at ¶12. The Debtor submits that based on the current terms, conditions and operation of the Ground Lease, he will be unable to refinance the subject mortgages when they become due in November 2008. *Id.* at 2008.

**C.    BRP and JSRM's Joint Statement of Facts**

In or about December 2006, the Debtor contacted John A. Ponczek of BRP in response to an advertisement seeking to purchase or lease commercial property for the purpose of development or redevelopment. *Certification of John A. Ponczek in Opposition to the Debtor's Motion ("Ponczek Cert.")*, at ¶¶ 2, 4-5. The Debtor identified himself as the owner of the Property and stated that he wanted to retain ownership of the Property and enter into a Ground Lease to maintain a "fruit stand." *Id.* at ¶6. At that time, the Debtor neither revealed that he was in bankruptcy nor that the Property was property of the estate. *Id.* at ¶8.

Thereafter, Ponczek contacted Jack Silverman ("Silverman") to determine if there was interest to engage in redevelopment of this Property. *Id.* at ¶9. Jack Silverman and William Silverman each own twenty-five percent (25%) membership interest in BRP and Jack Silverman is the sole member and manager of JSRM. *Certification of Jack Silverman in Opposition to the*

*Debtor's Motion ("Silverman Cert.")*, at ¶1-2. In mid-January 2007, the Debtor first revealed to Ponczek that he was in bankruptcy and that he required financing to remove the Property and himself from the jurisdiction of the Bankruptcy Court. He also advised Ponczek that another offer for a Ground Lease existed, although that offer would not allow the Debtor to maintain his fruit stand. *Ponczek Cert.* at ¶10. After conversations with the Debtor and the Trustee, Ponczek contacted Silverman to ascertain whether Silverman would seek financing on behalf of the Debtor. *Id.* at ¶13. Silverman later agreed to obtain the needed financing ("Loan") upon the condition that the negotiation of the Ground Lease would be undisturbed. Silverman maintains that his primary interest was the Ground Lease and the Loan was incidental to the facilitation of the Ground Lease through the resolution of the bankruptcy proceeding. *Silverman Cert.*, at ¶6.

As negotiations for the Loan began, the Debtor's then-counsel, Herbert Levenson, Esq., insisted that the Loan proceed as a stand-alone matter, to which Ponczek refused. *Ponczek Cert.* at ¶16. Ultimately, the Debtor terminated negotiations because another financier was located. However, the latter loan never materialized. *Id.* at ¶¶ 16-17. In mid-March 2007, the Debtor again contacted Ponczek, who in turn requested the renewed involvement of Silverman to obtain financing and to commence negotiations on the Ground Lease and Loan. *Id.* at ¶17. On March 26, 2007, a meeting among the Debtor, Levenson, Silverman, John Lama (the proposed lender), and Ponczek occurred in which they discussed a loan for $650,000.00 for an eighteen-month period, with all interest to accrue to the maturity date. *Id.* at ¶21. Lama advised Silverman that he would not make the loan directly to the Debtor and instead proposed that the proceeds be advanced to JSRM, which could make the loan to the Debtor. *Id.* at ¶22. JSRM would then in turn assign the Debtor's mortgage to Lama. *Id.* at ¶23.

As a result, the Court entered the April-June 2007 Consent Orders authorizing the negotiated financing arrangement in lieu of a Property sale. *Id.* at ¶25. At the time of the Ground Lease closing on May 16, 2007, additional negotiations occurred that resulted in an Addendum to the Ground Lease, which included terms the Debtor insisted upon, however, such Addendum did not mandate that BRP occupy the Property itself or refrain from subletting such Property. *Id.* at ¶33; *Silverman Cert.* at ¶12. Silverman alleges that the Debtor's argument regarding the leasing of the space to a third party is an attempt at this point to subvert the terms of the Ground Lease by claiming that BRP is in default.

After the closing on the Loan and the Ground Lease on May 16, 2007, BRP began extensive preparation for its submission of an application for the development of the Property to the Township, including the delineation of the wetlands surrounding the Property. *Silverman Cert.* at ¶7; *Ponczek Cert.* at ¶37. To date, BRP has expended approximately $20,000.00 in connection with this application. *Ponczek Cert.* at ¶38.

The Debtor accepted the proceeds of the loan from JSRM on May 16, 2007. *Id.* at ¶39. He Debtor utilized the proceeds to relieve the pending tax liens on the Property as well as on the residence he and his mother occupied. *Id.* The Debtor also paid his secured creditors, claims against his mother, and established funding for the resolution of his bankruptcy. *Id.* Although JSRM assigned the Loan to the lender, NY Urban Real Estate Investments, Inc. ("NYUREI"), JSRM still retains an interest here because NYUREI never released JSRM from direct liability. JSRM would thus serve as a guarantor in the case of default by the Debtor. *Silverman Cert.* at ¶10. On September 28, 2007, JSRM refinanced the loan and NYUREI has released or is in the process of releasing the

9

recorded assignments with all debt instruments to be returned to JSRM. Thus, the assignment is now moot. *Id.* at ¶11.

In addition to the Debtor's argument that BRP has unlawfully sublet the Property, he alleges that BRP is in default on the Ground Lease for failure to pay real estate taxes and insurance premiums. *Id.* at ¶13. BRP did not receive notice from the taxing authority that payment of fourth-quarter taxes had not been received. *Id.* at ¶14. Instead, the Debtor received the notice but did not forward it to BRP. Upon immediately learning of the arrears, Tina Melchionna, JSRM's office manager, mailed a check to the Tax Collector on October 19, 2007 in the amount of $6,690.74 for the fourth-quarter taxes but did not receive a receipt. *Certification of Tina Melchionna in Opposition to Debtor's Motion ("Melchionna Cert.")*, at ¶¶ 1, 4-5. Pursuant to her customary practices, had she not received the receipt by the end of November, she would have investigated the matter. *Id.* at ¶5. After verifying that the check had not been paid, on November 27, 2007, Melchionna contacted City National Bank to stop payment of the check. *Id.* at ¶7. On November 28, 2007, Melchionna obtained the total amount of taxes with interest or penalty due and effectuated hand delivery of a check for $6,770.44 to the Tax Collector's office. *Id.* at ¶8. The taxes are now paid in full. The original check has not been returned.

With regard to the insurance premiums, Silverman concedes they were handled improperly by his office as it failed to log the monthly payment due to the insurance agent. *Silverman Cert.* at ¶15. As a result of the current motion, Silverman became aware of the deficiency and has since made arrangements for past and future payments. *Id.* Had the Debtor made JSRM aware of the taxes and insurance premiums due, JSRM would have promptly paid them. *Id.* Instead, the Debtor received notices and is now using them as a basis for the instant motion to terminate the Ground Lease. *Id.*

at ¶¶15-16. JSRM has agreed to reimburse the Debtor for any payments made for the third-quarter taxes upon his proof of payment as well as any insurance premiums he paid. *Id.* at ¶16. Both Ponczek and Silverman submit that these deficiencies, which are now resolved, do not serve as grounds for termination of the Ground Lease. *Id.* at ¶17; *Ponczek Cert.* at ¶40.

BRP initially sought a certificate of occupany for a third-party tenant but later withdrew the application and sought a certificate for itself. *Ponczek Cert.* at ¶45. Its actions were due to the Debtor's persistent allegations to the Township that BRP was on the Property illegally and had no authority to sublet the Property. *Id.* Its second application for a certificate of occupancy is still pending. *Id.* BRP further contends that the "blanket zoning" provision was included in the Ground Lease for the benefit of the Debtor and his mother and the Debtor's insistence that he maintain a fruit stand on the Property, despite the Debtor's argument that he did not approve such term. *Id.* at ¶46. BRP determined that a rezoning application would provide the flexibility to allow the Debtor's fruit stand. *Id.* BRP now states that if the Debtor still objects to this provision, BRP will not make a submission for rezoning. *Id.* BRP reiterates that both BRP and JSRM entered into the loan agreement conditioned upon the Ground Lease and the Debtor, having reaped the benefits of the Loan, may not now try to terminate the Ground Lease. *Id.* at ¶47.

## Discussion

**A.     Motion to Reconsider**

BRP and JSRM contend that the motion to reconsider the Abandonment Order was neither timely filed nor was the issue addressed in the Debtor's letter memorandum, thus, the Third Circuit's precedent in *Pacor, Inc. v. Higgins* should govern. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994-96 (3d Cir. 1984. The *Pacor* Court held that upon the Trustee's abandonment of property, the bankruptcy

court does not have jurisdiction over the property as it is no longer property of the estate. *Id.* Although this is a sound argument, this Court will address the merits of the Debtor's motion.

A court should grant a motion for reconsideration when the moving party shows one of three circumstances: (1) there is newly available evidence; (2) there is a need to correct a clear error of law or prevent manifest injustice; and (3) there is an intervening change in the controlling law. *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 182 (Bankr. D.N.J. 2002) (citing *North River Ins. Co. v. CIGNA Reins. Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration are fully within the bankruptcy court's discretion. *In re Christie*, 222 B.R. 64, 68 (Bankr. D.N.J. 1998) (citation omitted).

In satisfying its burden for a motion for reconsideration, the moving party must set forth "'concisely the matters or controlling decision which the counsel believes the court has overlooked.'" *Id*. at 67 (quoting *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1219 (D.N.J. 1993)). A motion for reconsideration cannot be used as a "vehicle to reargue the motion or to present evidence which should have been raised before.'" *Id.* at 68 (quoting *Database*, 825 F. Supp. at 1220). That is, a motion for reconsideration should not provide the parties with an opportunity for a "second bite at the apple." *Id.* at 67 (citing *Database*, 825 F. Supp. at 1220). Further, the moving party must show more than "'mere disagreement with the court's decision and recapitulation of the cases and arguments considered by the court before rendering its original decision.'" *Id*. at 68 (quoting *Database*, 825 F. Supp. at 1220).

A motion for reconsideration will only be granted if the moving party has provided the court with dispositive factual matters or controlling decisions of law that were overlooked. *In re Engel*, 190 B.R. 206, 211-12 (Bankr. D.N.J. 1995) *aff'd*, 124 F.3d 567 (3d Cir. 1997). A reconsideration

motion is inappropriate to be used to reargue positions previously made or to otherwise ask the court to rethink issues already considered, rightly or wrongly. *Id.* at 212 (citing *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826 (D.N.J. 1992)). Finally, a motion for reconsideration is an extraordinary remedy that should be used "sparingly" and limited to exceptional circumstances. *In re Christie*, 222 B.R. at 68 (citing *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir. 1991)).

Here, the Debtor has failed to meet his burden of proving a viable ground for reconsideration. As the Trustee correctly noted, the Debtor failed to cite authority for either the ground of change of law or new evidence, thus, the Debtor's motion is based upon error of law or prevention of manifest injustice. The Debtor argues that the public policy grounds of clogging the equitable right of redemption are the basis to reconsider the Orders. The Debtor relies solely upon *Humble Oil & Refining Co. v. Doerr*, 123 N.J. Super. 530 (Ch. Div. 1973), for this proposition.

In *Humble Oil,* the property owner, Josephine Rokita Doerr and her husband, Victor Rokita secured a loan for the purpose of expanding a garage facility which they owned. *Id.* at 535. The owners secured a $30,000.00 loan but before completion of the transaction, a Humble Oil representative offered better terms through Humble Oil's contacts. *Id.* at 535-36. Eventually a loan was entered into with National State Bank for $35,000 at a lower interest rate using a two-party lease between Humble Oil, Doerr and the operating entity running the garage for a fifteen year period. *Id.* at 536-37. This lease granted a fixed purchase price option to Humble Oil whereby it could purchase the property at any time during the lease. *Id.* Doerr then assigned the lease to National State Bank as collateral security. *Id.* at 537. The rent due from Humble Oil was in the amount to pay the principal and interest to the Bank and the rental amount collected by Humble Oil under its lease to

the operating company was in the amount to be paid by Humble Oil under its lease with Doerr. *Id.* In that case, the court determined that Humble Oil's lease served as an equitable mortgage with Humble Oil as the mortgagee and the fixed purchase price option served as a clog on the equity of redemption because Humble Oil was never to enter possession of the property, run the business, or invest any funds into the premises. *Id.* at 552-553.

BRP and JSRM correctly demonstrate that the factual situation of the instant matter is different from *Humble Oil.* The Ground Lease, negotiated by the Debtor and his counsel, does not have the characteristics of an equitable mortgage because it is a current transfer of possession for the payment of rent and is independent from the negotiated Loan agreement between the Debtor and JSRM. The parties negotiated an operating lease where BRP is not a guarantor or surety, instead BRP negotiated a possessory interest.  BRP and JSRM repeatedly asserted that the Loan was entered into only to facilitate the Ground Lease and that the main focus of the relationship with the Debtor was the Ground Lease. Further evidence of BRP and JSRM's true interest is BRP's investment of $20,000 in preparation for the development of the Property. Additionally, BRP has made payments to the Debtor and his mother for rent, taxes and development costs.  Thus, it is clear that the Ground Lease is not an equitable mortgage and thus does not affect the equitable right of redemption.

**B.     Motion to Terminate the Ground Lease**

The Debtor argues that BRP breached the Ground Lease by failing to pay the real estate taxes and insurance premiums and therefore it should be terminated. BRP concedes that arrears occurred for both the real estate taxes and the insurance premiums and that it is at fault for this result. However, BRP makes a strong argument that the total arrearage is *de minimis* and further demonstrated quick action to resolve such arrearages. The Debtor had notice of the arrearages prior

14

to filing the instant motion to seek termination of the Ground Lease but failed to provide such notice to BRP. As soon as BRP received notice of the arrears, BRP took immediate steps to correct the default both with the Tax Collector and the insurance agent. BRP further reimbursed the Debtor and third parties for payments they made as disputing over the small amounts was unnecessary. No default currently exists on either the real estate taxes or the insurance premiums.

The Debtor additionally contends that BRP breached the occupancy clause of the Lease by attempting to sublease the Property. The Debtor negotiated, together with Counsel, a late Addendum to the Ground Lease, but all parties provided in their Certifications to the instant motions and opposition that no such exclusivity provision was established. The Ground Lease, agreed to by the Debtor, allows BRP to use the property for any legal purpose including sublease; thus, this also is not a ground for termination fo the Ground Lease.

Essentially, the Debtor's motion attempts to articulate any possible basis to terminate the Ground Lease after the Debtor has reaped the benefit of the Loan. Although defaults occurred with the real estate taxes and the insurance premiums, the arrears were *de minimis* and quickly cured. As such, they do not constitute a material breach of the Lease sufficient to warrant termination. The Debtor's motion to terminate the Ground Lease is hereby denied.

**C.     Motion for Recusal of The Honorable Donald H. Steckroth**

Finally, pursuant to Section 144 and Section 455 of Title 28, the Debtor seeks the recusal of this Court from the instant matter arguing that bias exists. JSRM and BRP correctly aver that Section 144 is limited to district judges and inapplicable to bankruptcy judges. *In re Celotex Corp.,* 137 B.R. 868, 874 & n.5 (Bankr. M.D. Fla, Tampa Div., 1992); *see also Mayer v. Pa. Higher Educ. Assistance Agency (In re Mayer),* 1996 Bankr. LEXIS 314, at *6-7 (Bankr. E.D. Pa. April 2, 1996).

Section 455 applies to bankruptcy judges whereby recusal is required when impartiality might be reasonably questioned or where personal bias exists. 28 U.S.C. §455(a) & (b)(1) (2007).

The Supreme Court articulated that judicial rulings do not provide a basis for a recusal motion. *Liteky v. United States*, 510 U.S. 540, 548 (1994). Judicial rulings are more appropriately grounds for appeal, not recusal as they are rarely based on extrajudical sources. *Id.* at 555-56. A judicial ruling requires "deep-rooted favoritism" to warrant recusal. *Id.* at 555. The Debtor's legal memorandum cites absolutely no legal authority in support of the Debtor's contentions and instead Debtor's counsel lists four cases in his certification in support of the recusal motion without any legal analysis or comparison to the facts at hand. Clearly, the Debtor's substantial burden has not been met. Rather than citing specific examples to warrant the granting of its recusal motions, the Debtor argues that the Court's rulings are unfair and biased. The Court does not find this to be the case, as evidenced by the District Court's affirming of this Court's Orders. Rather, this Court has been understanding with the Debtor and his various requests, particularly the one at issue here to allow the entry of a Ground Lease and Loan rather than sale of the Property as first proposed by the Trustee. The Debtor's discontent with the Court's rulings does not form a basis for recusal.

In addition to the lack of merit in the Debtor's argument, recusal of this Court at this stage in the bankruptcy would be contrary to the principles of judicial economy. The bankruptcy proceedings began in 2004 and now four years later this Court is intimately familiar with the events that have transpired throughout the course of the case. Grounds for recusal have not been established by the Debtor, and thus, the motion is hereby denied.

**Conclusion**

For the foregoing reasons, the Debtor's motions to reconsider the Enforcement Order and Abandonment Order, to terminate the Ground Lease and to recuse The Honorable Donald H. Steckroth are all hereby denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

/s/ *Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: January 24, 2008